IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| CANDIS CLARK, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | CASE NO.: 3:09-cv-556-MEF |
| | ) | |
| MACON COUNTY GREYHOUND | ) | (WO- Recommended for Publication) |
| PARK, INC., | ) | |
| | ) | |
| DEFENDANT. | ) | |

## MEMORANDUM OPINION AND ORDER

This case is an employment discrimination case in which the plaintiff, Candis Clark

("Clark") challenges the termination of her employment with Macon County Greyhound

Park, Inc. ("MCGP").  She contends the termination of her employment violated her rights

under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* (hereinafter

"FMLA").  MCGP has filed a Motion for Summary Judgment (Doc. # 16), which Clark has

opposed.  After careful consideration of the arguments of counsel, the relevant law, and the

record as a whole, the Court finds that the motion for summary judgment is due to be

DENIED in part and GRANTED in part as set out below.

### JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over Clark's FMLA claims pursuant

to 28 U.S.C. § 1331 (federal question) and 29 U.S.C. § 2617(a)(2).  The parties do not

contest personal jurisdiction or venue, and the Court finds adequate allegations supporting

both.

## SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of

the non-movant and must draw all justifiable inferences from the evidence in the non-moving

party's favor.  *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986);

*McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1243 (11th Cir. 2003) (the evidence

and all reasonable inferences from the evidence must be viewed in the light most favorable

to the nonmovant).  After the nonmoving party has responded to the motion for summary

judgment, the court must grant summary judgment if there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P.

56(c).

> The mere existence of some factual dispute will not defeat
> summary judgment unless that factual dispute is material to an
> issue affecting the outcome of the case.  The relevant rules of
> substantive law dictate the materiality of a disputed fact.  A
> genuine issue of material fact does not exist unless there is
> sufficient evidence favoring the nonmoving party for a
> reasonable jury to return a verdict in its favor.

*Chapman v. AI Transp.,* 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v.*

*City of Miami,* 52 F.3d 918, 921 (11th Cir. 1995) (internal marks and citations omitted)).

## FACTS AND PROCEDURAL HISTORY

The Court has carefully considered all deposition excerpts and documents submitted

in support of and in opposition to the motion.  The submissions of the parties, viewed in the

light most favorable to the non-moving party, establish the following facts:

MCGP hired Clark in November of 1994.  Initially, she worked as a maintenance

secretary.  Clark was very comfortable in this position.  She enjoyed the working conditions

3

it presented and her co-workers.

In January of 2007, MCGP began moving employees into different jobs. In the middle of April of 2007, MCGP moved Clark into a new job as a money sorter. As a money sorter, Clark worked with other money sorters in the money room. This was a small, noisy, and crowded room, which was kept locked.[1] The room had a single door with a window in it. Clark also found her new job responsibilities of counting and sorting money to be stressful. Clark has bipolar disorder.[2] She found that her new working environment was making her bipolar disorder harder to manage. It was causing her to suffer panic attacks and to feel as if she no longer wanted to live.

After she had been working in the money room for about six weeks, Clark accompanied her mother to a doctor's appointment. While examining Clark's mother, Dr. Russell noticed Clark's distress. Dr. Russell told Clark she needed to take FMLA leave and wrote her two excuses on his stock "Certificate to Return to Work/School" form, each for a period of one month. Dr. Russell also told Clark to come back to see him the next day and to go back to see Dr. Shaw[3] because Dr. Russell couldn't help Clark himself. Evidence in

---

[1] Clark has a phobia about locked doors.

[2] According to Clark, she received this diagnosis about three months before she requested FMLA leave. Clark testified, however, that she has been taking prescription anti-depressant medications for six years. It is undisputed that many employees of MCGP knew of Clark's diagnosis.

[3] Dr. Shaw is a psychiatrist who works at Hillside Mental Health. Dr. Shaw diagnosed Clark's bipolar disorder and provided treatment to Clark.

4

the record indicates that Dr. Russell saw Clark on June 14, 2007.   The last day that Clark worked in MCGP's money room was June 12, 2007.   The record contains no evidence indicating the next date on which Clark was scheduled to work.

According to Clark, she called her supervisor on that day and told her that when she had taken her mother to the doctor, the doctor had told her that she was in worse shape than her mother.[4]   Clark also went to see Jeanette Bowling ("Bowling"), the personnel manager for MCGP.   She gave Bowling one of the excuses[5] that Dr. Russell had written for her.   This excuse was a "Certificate to Return to Work/School" signed by Dr. Russell which indicated that Clark had been under Dr. Russell's care from June 12, 2007 to July 16, 2007 and that she could return to her regular duties on July 16, 2007.

According to Clark's testimony, Bowling gave her certain forms to be completed by Clark and her doctor.   One set of forms was an application for short term disability and the other set of forms related to an application for FMLA leave.   According to Clark's testimony, Bowling told Clark to send *all* the completed forms to the insurance company in Birmingham which managed the short term disability insurance.[6]   Clark had the impression that at some

---

[4]   According to a document from her personnel file, Clark called and spoke to Zach Griffin on June 15, 2007.

[5]   MCGP argues that this is not the case, but Clark's deposition testimony is evidence from which a reasonable jury could find this to be the case.   *See* Doc. # 19 Ex. 1 Clark Dep. at p. 38, line 9 to p. 39, line 12.

[6]   It is undisputed that on November 20, 2001, Clark received a copy of the Employee Handbook for MCGP.   It is undisputed that the Employee Handbook included a discussion of the FMLA and indicated that "An employee requesting leave is required to provide

point the forms would be returned to her and she would then take them to Bowling. Clark never took the completed FMLA paperwork to MCGP because she did not receive them back from the insurance company until weeks after the termination of her employment.

Clark and her doctor completed the forms and mailed them to the insurance company just as Bowling had instructed. It appears that Dr. Russell signed the Physician's statement that was part of the claim for short term disability insurance on June 21, 2007. In that statement, Dr. Russell indicated that Clark's symptoms began in late March of 2007 and that he had last seen Clark on June 14, 2007. He also indicated that the expected date for Clark's return to work was unknown. Similarly, on Clark's request form for FMLA leave, it indicates that the requested leave would begin on June 14, 2007 and that her expected date of return was unknown. Moreover, the Certification of Health Care Provider completed by Dr. Russell on June 21, 2007 in support of Clark's application for FMLA leave indicates that Clark was incapacitated and needed to be absent from work because she was unable to perform work of any kind, that the condition commenced on June 14, 2007, and that probable duration of the condition was unknown.

On July 2, 2007, MCGP terminated Clark's employment. The personnel paperwork indicates that the reason for the termination of Clark's employment was "job abandonment."

---

advance notice and medical certification. An employee may not retroactively attempt to invoke FMLA after an unexcused absence from work." Notably absent from the Employee Handbook is any information indicating to whom the notice and medical certification are to be provided. The Employee Handbook also indicates that MCGP viewed absence of two consecutive working days without proper notification an offense warranting termination of employment.

The personnel form recording the termination action stated that Clark had called the office and spoken with Zach Griffin on June 15, 2007.  She told him that she had paperwork from her doctor to place her on medical leave, but according to the form, she did not turn it in.

A MCGP employee told Clark that news that she had been fired was circulating at work.  Clark called Bowling and said that she had heard this rumor, but that she was on FMLA leave.  Bowling told Clark that her employment had been terminated.  According to Clark, Bowling said that Clark had failed to do her FMLA paperwork properly.  After hearing of the termination decision, Clark delivered a copy of the second excuse from Dr. Russell to bowling so that it would be in her file.  This excuse was the Certificate to Return to Work/School signed by Dr. Russell which indicated that she was under his care from July 16, 2007 to August 31, 2007 and that she could return to work on August 31, 2007.

At the time of the termination of her employment on July 2, 2007, Clark admits that she had not delivered the completed FMLA application and certification forms to MCGP.  According to her testimony, she had not done so because she had followed Bowling's instructions and sent them to Unimerica, which had not yet returned them to Clark.  It was not until late July of 2007, that Clark received notice from the insurance company that her claim for short term disability insurance had been denied.

After the termination of her employment in July of 2007, Clark applied for unemployment compensation.  She solicited Dr. Russell's help with a certification that she had been under his care, but that she was able to work.  In so doing she explained that she

had been denied short term disability insurance and fired from her job and that she could not obtain unemployment benefits unless he certified a date on which she could return to the workforce.  Dr. Russell provided a certification dated July 19, 2007, in which he opined that she was able to work, but not in her usual occupation.  He also stated that he had been treating her from June 15, 2007 to July 15, 2007 for phobia and fatigue.  Clark received twenty-six weeks of unemployment compensation.

In late September of 2007, Clark applied Social Security Disability benefits.  As part of her application process, she told the Social Security Administration that she had become unable to work because of her condition on June 12, 2007 and that as of September 25, 2007, she continued to be unable to work.  After Clark submitted to a psychological examination, the Social Security Administration approved her application for disability benefits.  She began receiving these benefits in December of 2007 or January of 2008.

On June 12, 2009, Clark filed suit in this Court against MCGP.  Clark seeks compensatory damages, punitive damages, declaratory relief, injunctive relief including modification of MCGP's employment practices, and attorney's fees. Clark alleges that MCGP violated the FMLA in two ways.  First, Clark alleges that MCGP failed and refused to permit her to take leave to which she was entitled under the FMLA.  Second, she alleges that MCGP terminated her employment as retaliation against her on the basis of her protected activity of invoking leave under the FMLA.  MCGP denies Clark's allegations and seeks summary judgment on a variety of bases discussed below.

**DISCUSSION**

Congress enacted the FMLA to assist families in balancing the demands of the workplace with the needs of the family and to entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition. *See* 29 U.S.C. § 2601(b) (2009). To that end, a covered employer must allow an eligible employee to take a total of twelve work weeks of leave during any twelve month period for one of several enumerated reasons. *See* 29 U.S.C. § 2612(a) (2009). The employer is not required to pay the employee for FMLA leave. *See* 29 U.S.C. § 2612(c) (2009). The FMLA further provides that subject to certain exceptions which the parties have not argued apply in this case,

> any eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave – (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

29 U.S.C. § 2614(a)(1) (2009). The FMLA permits employers to require employees on leave "to report periodically to the employer on the status and intention of the employee to return to work." 29 U.S.C. § 2614(a)(5) (2009). Moreover, employers are entitled to require that the need for leave be supported by the certification of a health care provider. 29 U.S.C. § 2614(a)(4) (2009).

It is unlawful for any employer to interfere with, restrain, or deny the exercise, or the attempt to exercise, any right provided by the FMLA. 29 U.S.C. § 2615(a)(1) (2009). This

provision not only proscribes discriminatory treatment, but also prohibits failure to comply with the FMLA's prescriptive provisions such as the section requiring an employer to allow for leave in the enumerated circumstances and for reinstatement after leave. *See, e.g., Strickland v. Water Works & Sewer Bd. of the City of Birmingham,* 239 F.3d 1199 (11th Cir. 2001) (holding that district court erred by construing claim solely as a retaliation claim where plaintiff claimed his termination while on leave constituted both retaliation and a denial of his right to reinstatement under the FMLA); *Peters v. Cmty. Action Comm., Inc. of Chambers-Tallapoosa-Coosa,* 977 F. Supp. 1428, 1433 (M.D. Ala. 1997) (explaining the protections available under the prospective and prescriptive provisions of the FMLA).

To preserve the availability of these rights, and to enforce them, the FMLA creates two types of claims: interference claims, in which an employee asserts that her employer denied or otherwise interfered with his substantive rights under the Act, *see* 29 U.S.C. § 2615(a)(1) (2009), and retaliation claims, in which an employee asserts that her employer discriminated against her because he engaged in activity protected by the Act, *see* 29 U.S.C. § 2615(a)(1) & (2) (2009).[7] To state a FMLA claim of interference with a substantive right, an employee need only demonstrate by a preponderance of the evidence that she was entitled to the benefit denied. *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1353-54 (11th Cir. 2000). To the contrary, to succeed on a FMLA retaliation claim, an employee

---

[7] The Eleventh Circuit has clarified that "[w]hile the FMLA does not clearly delineate these two claims with the labels 'interference' and 'retaliation,' those are the labels courts have used in describing an employee's claims under the Act." *Strickland,* 239 F.3d at 1206 n.9 (citation omitted).

10

must demonstrate that her employer intentionally discriminated against her in the form of an adverse employment action for having exercised an FMLA right.  *See Strickland,* 239 F.3d at 1207 (delineating between the two forms of FMLA claims).  "In other words, a plaintiff bringing a retaliation claim faces the increased burden of showing that [her] employer's actions 'were motivated by an impermissible retaliatory or discriminatory animus.'"  *Id*. (citation omitted).  These two types of FMLA claims, however, can be asserted simultaneously.  *Id*. (holding that district court erred by construing claim solely as a retaliation claim where plaintiff claimed his termination while on leave constituted both retaliation and a denial of his right to reinstatement under the FMLA); *Peters,* 977 F. Supp. at 1433 (explaining the protections available under the prospective and prescriptive provisions of the FMLA).  Clark follows this precedent and asserts both interference and retaliation claims under the FMLA.

**A.  Interference Claims**

As articulated in the Complaint, Clark's sole interference claim arises out of her contention that MCGP illegally interfered with her FMLA rights by denying her FMLA leave.  As a practical matter, however, she also injects the possibility of a second interference claim through her repeated requests for reinstatement.  Failure to reinstate after an FMLA leave is a separate kind of interference claim.  The Court will discuss these two interference claims separately.

### 1. Denial of FMLA Leave Claim

#### a. Notice of Need for Leave

There is no dispute in this case that MCGP is an employer within the scope of the FMLA's coverage or that Clark was eligible under the FMLA for leave in a properly qualified situation.[8]  To prevail on her interference claim arising out of what she contends was a denial of FMLA leave, Clark must first demonstrate that she was entitled to the benefit of FMLA because she gave proper notice to MCGP and that she suffered from a "serious health condition."  If she can do both of those things, she must then demonstrate that MCGP denied her that leave to which she was entitled.  In this case, this MCGP does not dispute for purposes of its motion that Clark suffered from a serious health condition or that it never granted Clark's request for FMLA leave.  Thus, the real issue is whether Clark complied with the applicable notice requirements.

An employee in need of FMLA leave must provide her employer with notice of the need for leave.  If the need for the leave is foreseeable, then the employee must, if practicable give no less than thirty days' notice before the date the leave is to begin.  *See* 29 U.S.C. § 2612(e)(2)(B) (2009); 29 C.F.R. § 825.302(a) (2009).  Where, as here, the need for leave is not foreseeable,[9] notice to the employer must be given "as soon as practicable under the facts

---

[8]  There is no dispute about the fact that as of June 2007, Clark had worked for more than twelve months and more than 1,250 hours for MCGP during the previous twelve months.

[9]  MCGP does not argue that the need for the leave here was foreseeable.  Viewed in the light most favorable to Clark, the Court is satisfied that Clark's need for leave was not

and circumstances of the particular case." *See* 29 C.F.R. § 825.303(a) (2009). The Eleventh Circuit Court of Appeals has held that "where an employee's need for FMLA leave is unforeseeable, the employee need only provide her employer with notice sufficient to make her employer aware that her absence is due to a potentially FMLA-qualifying reason." *Cruz v. Publix Super Markets, Inc.*, 428 F.3d 1379, 1382 (11th Cir. 2005) (citation omitted). Generally, it is expected that under these circumstances, an employee will provide notice within no more than one or two working days of learning the need for the leave. 29 C.F.R. § 825.303(a) (2009).

Notice to the employer may be given in person or by other means, including fax or telephone. 29 C.F.R. § 825.303(b) (2009). In giving notice of the need for leave, the employee need not expressly invoke the FMLA or mention it at all; rather, if the employee states that "leave is needed," the employer will thereafter be expected to obtain any additional required information through informal means." *Id.; see Stickland*, 239 F.3d at 1209 (recognizing that once notice has been given, the "regulations place on the employer the burden of ascertaining whether the employee's absence actually qualified for FMLA protection.")

Due to the procedural posture of this case, the Court must view the facts properly presented in the light most favorable to Clark, the person against whom summary judgment

---

foreseeable. Her condition worsened after she was moved to the money room, and she began to have suicidal thoughts. It was not until she spoke to her doctor in June of 2007, that she knew that her working conditions had caused her mental condition to deteriorate.

13

is sought.   When the Court views the facts in this fashion, it is clear that a reasonable jury could find that Clark timely put her employer on notice of her need for FMLA leave. According to Clark's testimony, she called her supervisor[10] and went to see Bowling within a day or two of her doctor's visit where the seriousness of her medical condition and its cause were revealed to her.   Moreover, Clark has testified that she presented Bowling with a signed doctor's excuse indicating that Clark was under a doctor's care and could not return to work until July 16, 2007.  Clark testified that she asked Bowling if she could go out on FMLA leave.  It is undisputed that Bowling gave Clark the forms with which to apply both for FMLA leave and the forms with which to apply for short term disability insurance benefits.  There is no question then that MCGP had notice of Clark's request for FMLA leave.

### b.  Certification

MCGP contends that Clark never returned the forms for FMLA leave to it and that it consequently terminated her employment pursuant to its policies for job abandonment.  Clark responds that she fully complied with the instructions MCGP gave her regarding completion and delivery of the forms.  These conflicting positions require the Court to closely consider the nature of the FMLA's requirements regarding certification as well as what evidence exists in the factual record before the Court concerning MCGP's request for certification.

---

[10]   While it is not clear to the Court if this fact is supported by MCGP's records, the Court notes that an MCGP document verifies a call to someone at MCGP named Zach Griffith on June 15, 2007, during which Clark advised that she had paperwork from her doctor to place her on a medical leave.  *See* Doc. # 17-4.

The provisions of the FMLA specify that an employer "may require that a request for leave [because of a serious health condition that makes the employee unable to perform the functions of the position of such employee] be supported by certification issued by the health care provider of the eligible employee."  29 U.S.C. § 2613(a) (2009); *Baldwin-Love v. Electronic Data Sys. Corp.*, 307 F. Supp. 2d 1222, 1229 (M.D. Ala. 2004).  Such a certification is legally sufficient if it states: (1) the date on which the serious health condition commenced; (2) the probable duration of the condition; (3) the appropriate medical facts within the knowledge of the health care provider regarding the condition; and a statement that the employee is unable to perform the functions of the position of the employee.  29 U.S.C. § 2613(b)(1) - (4) (2009).  *Accord, Parris v. Miami Herald Publ'g Co.*, 216 F.3d 1298, 1302 n.2 (11th Cir. 2000); *Baldwin-Love*, 307 F. Supp. 2d at 1229.

Once provided with a request for such a certification, the employee must "provide, in a timely manner, a copy of such certification to the employer."  29 U.S.C. § 2613(a) (2009).  The Department of Labor regulations are more specific in that they require the employee to provide the requested certification within fifteen calendar days of the employer's request for certification unless it is not practicable under the circumstances or unless the employer allows a longer period of time for the return of the certification.  *See* 29 C.F.R. § 825.305(b) (2009).  "At the time the employer requests certification, the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification."  29 C.F.R. § 825.305(d) (2009).  *See also Baldwin-Love*, 307 F. Supp. 2d at

15

1229. "An employee's failure to meet the certification requirements renders the employee's absence unprotected by the FMLA." *Baldwin-Love*, 307 F. Supp. 2d at 1229.[11]

Where an employer has failed to offer evidence that it told the employee of the deadline for returning the certification to the employer at the time the employer requested the certification or has failed to offer evidence that it advised the employee of the consequences for failing to timely return the certification, the employer cannot be entitled to judgment as a matter of law on the employee's interference claim under the FMLA. *See, e.g., Michener v. Bryanlgh Health Sys.*, No. 4:08cv3202, 2009 WL 2840530 at *5 (D. Neb. Aug. 31, 2009) (genuine issues of material fact existed as to whether employer notified employee that medical certification was required or consequences to employee of failure to timely return the certification to the employer, therefore employer's summary judgment motion was denied); *Bodrick v. BellSouth Bus. Sys., Inc.*, No.Civ. A. 1:05cv663RLV, 2006 WL 559239 at *8 (N.D. Ga. Mar. 1, 2006) (denying employer's motion for summary judgment on interference claim where there was a factual dispute concerning whether plaintiff was

---

[11] MCGP relies on *Baldwin-Love* in its argument in favor of summary judgment. Importantly, in *Baldwin-Love*, there was ample evidence that the employer had repeatedly advised the employee of the requirement of returning the certification and warned her of the consequences for failing to do so. 307 F. Supp. 2d at 1234. Thus, *Baldwin-Love* is materially different from the facts of this case. Moreover, MCGP relies on *Cash v. Smith*, 231 F.3d 1301 (11th Cir. 2000). It too is distinguishable because it was undisputed that the employee in *Cash* had received the required information about the need to timely return the certification and the consequences should the employee fail to do so. *Id.* The employee's problem in *Cash* was not a lack of information, but rather the failure of the employee's physician, who completed the necessary paperwork which was returned to the employer, to certify that the FMLA prerequisites for leave were satisfied. *Id.*

informed of the deadline for returning the certification forms and the consequences for failing to hand in the forms); *Peter v. Lincoln Tech. Inst., Inc.*, 255 F. Supp. 2d 417, 443 (E.D. Pa. 2002) (employer's failure to provide employee with deadline for providing certification or with notice that she might be discharged precluded entry of summary judgment for employer); *Marrero v. Camden County Bd. of Social Serv.*, 164 F. Supp. 2d 455, 466 (D.N.J. 2001) (employer's motion for summary judgment on the employee's FMLA interference claim because even assuming policies in employee handbook were sufficient notice that medical certification was required for FMLA, employer was required to inform the employee that she had 15 days to provide such certification). Indeed, at least one court has gone farther and held that the failure of the employer to provide the notice set forth in the regulations at the time it requests an FMLA certification itself constituted interfering with, restraining or denying the exercise of rights provided by the FMLA. *See Chenoweth v. Wal-Mart Stores, Inc.*, 159 F. Supp. 2d 1032, 1037 (S.D. Ohio 2001).

According to Clark, Bowling instructed her how to fill out portions of the forms and how to have her doctor complete portions of the forms, but then told her to send *all* of the completed forms to Unimerica, the company handling the short term disability insurance claim. MCGP has not offered evidence that directly disputes this testimony. MCGP offers no deposition testimony from Bowling contradicting Clark on this point. MCGP cites the portion of its employee handbook that addresses leave, including FMLA leave. *See* Doc. # 17-3. The handbook makes it plain that MCGP expected its employees to seek approval for

leaves of absence from their positions and that failure to comply with this requirement could result in discharge. As for FMLA specifically, the text states that an employee requesting leave is required to provide notice and medical certification, but it in no way indicates to whom the medical certification is to be submitted or the time frame in which it must be provided. MCGP had not submitted any evidence regarding any other information conveyed to Clark that would have indicated that she was to submit her FMLA certification form to MCGP rather than to Unimerica or that she must do so within fifteen days of being given the form or that failure to do so would result in a denial of FMLA leave and termination of her employment.[12] In light of the facts before this Court and the applicable law set forth above,

---

[12] Two of the documents Clark provided to the Court clearly relate to FMLA leave rather than to her claim for disability benefits: (1) a Request for Family and Medical Leave (FMLA) form, *see* Doc. # 19-3; and (2) Certification of Health Care Provider (Family and Medical Leave Act of 1993), *see* Doc. # 19-10. Unlike each of the forms relating to the claim for disability benefits which clearly state on their faces that they are to be sent to Unimerica, these two FMLA forms do not indicate to whom they are to be sent. The Certification of Health Care Provider (Family and Medical Leave Act of 1993) form is devoid any information whatsoever about the intended recipient of the form. The Request for Family and Medical Leave (FMLA) form is somewhat more ambiguous. The bottom of this form has a line where the employee's supervisor should sign it and other processing information which suggests that a copy should go to corporate human resources, a copy should go to the employee, and a copy should go in the employee's personnel file. Additionally, nearer to the top of the form there was a statement in all capital letters which begins: "YOU HAVE 15 DAYS TO RETURN ...." Unfortunately, this language appears to have been either crossed out or highlighted and neither party has explained (1) what the obliterated text said, (2) whether that text was crossed out or highlighted, and (3) when the form was altered in this fashion. Given the state of the factual record and the procedural posture of the case, if the Court were to draw any inference from this form with Request for Family and Medical Leave (FMLA) form, it would be that the instructions to return the form within 15 days were crossed out before it was given to Clark. In any event, there is no statement on either document that advises Clark of the consequences for failing to return the documents to MCGP within fifteen days.

it is compelled to deny MCGP's motion for summary judgment as to Clark's FMLA interference claim.

### 2. Denial of Reinstatement Claim

MCGP contends that Clark's denial of reinstatement claim under the FMLA fails because Clark was unwilling or unable to perform the essential functions of her job at the end of the twelve-week FMLA leave period.  Clark fails to address this legal contention or to claim that any of the material facts relating to this contention are in dispute.  Here, it is undisputed that Clark admits that she has remained unable to return to work at her MCGP job since she left MCGP in June of 2007.  An employee has no right to reinstatement under the FMLA if the employee is unable to perform an essential function of her position even when that inability to perform results from the continuation of the serious health condition which brought about an entitlement to FMLA leave in the first place.  *See, e.g.,* 29 C.F.R. 825.216(c) (2009); *Colburn v. Parker Hannifin/Nichols Portland Div.*, 429 F.3d 325, 332 (1st Cir. 2005).  This is true even when the employer terminates the employee's employment prior to the end of the twelve-week period of leave.  *Id.* at 329-332.  The Court finds that on the undisputed factual record before it Clark was incapable of performing the essential duties of her former job as of twelve weeks after the date she began what she thought was going to be FMLA leave and that as a matter of law her claims for reinstatement under the FMLA fails.  To the extent that MCGP has sought summary judgment on this claim, it is due to be GRANTED.

19

**B.  Retaliation Claim**

In Clark's final claim, she contends that MCGP violated the FMLA's anti-retaliation provision when it terminated her employment on the basis of her having invoked her rights under the FMLA and having taken leave because of her serious health condition.  "Where, as here, a plaintiff alleges an FMLA retaliation claim without direct evidence of the employer's retaliatory intent, [courts] apply the burden shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green.*"  *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) (internal citation omitted).

> To establish a prima facie case of retaliation, the plaintiff must show that: (1) he engaged in statutorily protected activity; (2) he experienced an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action.  It the plaintiff makes out a prima facie case, the burden then shifts to the defendant to articulate a legitimate reason for the adverse action.  If the defendant does so, the plaintiff must then show that the defendant's proffered reason for the adverse action is pretextual.

*Id.* (internal citations omitted).

Clark has offered sufficient evidence to establish a prima facie case of retaliation. With regard to the first element, it is undisputed that Clark contacted her employer asking to take FMLA leave.   There is evidence from which reasonable jurors could conclude that she took time off work on account of a serious health condition that prevented her from being able to perform her job with MCGP and that MCGP knew that Clark's doctor had excused

her from work until mid-July.[13]   Termination of employment is an adverse employment action.  *See Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 798 (11th Cir. 2000), *cert. denied*, 532 U.S. 1037 (2001).  The close temporal proximity between her request for FMLA leave and the termination of her employment constitutes sufficient circumstantial evidence to create a genuine issue of material fact as to causation.  *See, e.g., Hurlbert*, 439 F.3d at 1297-98; *Snelling v. Stark Props., Inc.*, No. 5:05CV46DF, 2006 WL 2078562 at *14-*15 (M.D. Ga. July 24, 2006).

    MCGP proffers Clark's failure to return the certification form and her absences from work as legitimate, non-discriminatory reasons for the termination of her employment.  When the facts are viewed in the light most favorable to Clark, it appears that MCGP's own personnel representative specifically told Clark that she should send the FMLA paper to the disability insurance company first and then when it was returned submit it to MCGP.  Nonetheless, having given these misleading directions to Clark in mid-June, MCGP terminated Clark's employment on July 2, 2007 because she had not returned the completed certification form to it within fifteen days of Clark having been given the form.  Yet, there is no evidence whatsoever that MCGP ever advised Clark of the potential consequences of her failure to return the certification paperwork to MCGP within fifteen days.  In such

----

    [13]  While it is true that MCGP did not have an executed copy of its certification form back from Clark's doctor, according to Clark's testimony it did have a copy of the first excuse note that Clark's doctor had given her excusing her from work from mid-June through mid-July.  Thus, MCGP knew Clark was asking for FMLA leave and that her doctor thought she should be excused from work during this period before it terminated her employment.

circumstances, there exists a genuine issue of material fact as to whether MCGP's proffered reason for terminating Clark's employment was pretextual, and consequently, summary judgment is inappropriate on Clark's retaliation claim.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the Motion for Summary Judgment (Doc. # 16) is GRANTED in part and DENIED in part as follows:

1.  The Motion for Summary Judgment is GRANTED as to Clark's claim for interference with her right to reinstatement under the FMLA.

2.  The Motion for Summary Judgment is DENIED as to Clark's claim for interference with her right to take FMLA leave.

3.  The Motion for Summary Judgment is DENIED as to Clark's FMLA retaliation claim.

4.  To the extent that the Motion for Summary Judgment contains arguments relating to various types of damages or equitable relief, other than those which have been addressed here, the motion is DENIED without prejudice to these arguments being raised at an appropriate point during trial.

DONE this the 23rd day of July, 2010.

　　　　　　　　　　　　　　　　　/s/ Mark E. Fuller
　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　CHIEF UNITED STATES DISTRICT JUDGE